UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO.  08-203-M-01 |
| | ) | |
| vs. | ) | |
| | ) | |
| TIJANI AHMED SAANI, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S MOTION
## TO STAY AND FOR REVOCATION OF RELEASE ORDER

Pursuant to Title 18, United States Code, Section 3145(a)(1), the United States of

America respectfully moves this Court to revoke the May 14, 2007 order of the Hon. Lois

Bloom, Magistrate Judge, United States District Court for the Eastern District of New York,

releasing the defendant Tijani Ahmed Saani ("Saani") on bail (the "Release Order").  The

Government further requests that, pending a hearing and determination by this Court on Saani's

release status, the Court stay the Release Order and direct that Saani be remanded to custody for

removal to this jurisdiction.

Dated this 15th day of May, 2008.

Respectfully submitted,

WILLIAM M. WELCH II
Chief, Public Integrity Section

By: _____
ANN C. BRICKLEY
KATHRYN H. ALBRECHT
RICHARD B. EVANS
Trial Attorneys
Public Integrity Section
MARK W. PLETCHER
RYAN DANKS
Trial Attorneys
Antitrust Division
1400 New York Ave.
Washington, DC 20530
(202) 514-1412
(202) 514-3003 (facsimile)

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO.  08-203-M-01 |
| | ) | |
| vs. | ) | |
| | ) | |
| TIJANI AHMED SAANI, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR STAY AND REVOCATION OF RELEASE ORDER

The Government respectfully submits this memorandum in support of its motion, pursuant to Title 18, United States Code, Section 3145(a)(1),[1] to revoke the May 14, 2008 order of the Honorable Lois Bloom, Magistrate Judge, United States District Court for the Eastern District of New York, releasing the defendant Tijani Ahmed Saani ("Saani") on bail (the "Release Order") and, pending a hearing and determination by this Court, for a stay of the Release Order.[2]  As explained below, because the Government is likely to succeed on the merits of its claim that Saani is such a risk of flight that no condition or combination of conditions will reasonably assure his appearance at trial, this Court should stay the Release Order and remand Saani to custody for removal to this jurisdiction for a detention hearing before this Court.

_____

[1] Section 3145(a)(1) provides in pertinent part that, "If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court ... the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release ...  The motion shall be determined promptly."

[2] Judge Bloom orally granted the motion for a temporary stay of her release order and scheduled the matter for a status update at 2:00 p.m. today, May 15, 2008.

Background

On May 7, 2008, federal law enforcement agents, acting on a warrant issued by Magistrate Judge John M. Facciola, arrested Saani at JFK International Airport in Queens, New York (See complaint, warrant and affidavit in support of arrest warrant attached as Exhibit A). The arrest warrant issued on March 25, 2008, on the basis of a criminal complaint charging Saani with violating Title 26 United States Code, Section 7206(1) (tax perjury). Saani made his initial appearance on May 8, 2008, before the Honorable Joan M. Azrack, Chief Magistrate Judge, United States District Court for the Eastern District of New York, who denied Saani's request to be released on his own recognizance. Judge Azrack based her decision upon the Government's proffer that Saani was a flight risk because he has not lived in the United States for over a decade, has substantial assets in overseas accounts, including Ghana where he has familial ties and from which he maintains a passport. Saani's counsel requested that the matter be put over for one day to allow defense counsel to meet with Saani's family members and then present a more substantial bail package.

Judge Azrack heard the matter again on May 9, 2008, and indicated that Saani's brother, Ahmed Saani, was willing to post his Ohio residence which they proffered was worth over $300,000 but that the outstanding mortgage was over $200,000. Saani also indicated that his wife and Ahmed Saani were willing to sign on Saani's behalf. The day prior, through his attorney, Saani indicated that he had returned to the United States to interview for a job with the State Department and that Saani would likely begin a job at Dobbins, Georgia Air Force Base ("Dobbins") on May 25, 2008. Contrary to this proffer, the Government informed the court that Saani had in fact traveled into the United States on a round trip ticket and had a scheduled flight back to Kuwait on May 22, 2008, three days prior to his claimed start date with the Air Force. The Government also informed the

Court that Saani had not confirmed the May 25, 2008, start date with the Air Force.  Judge Azrack

again denied Saani's bail package and was prepared to order Saani removed to the District of

Columbia.  Saani's counsel then requested that the matter be postponed until May 14, 2008 to give

the defense time to present yet another bail package.

On Wednesday, May 14, 2008, a detention hearing was held before Magistrate Judge Lois

Bloom of the United States District Court for the Eastern District of New York.  At that time, the

Government again argued that Saani was a flight risk, attempting to make the proffer made to Judge

Azrack the week before.[3]  The Government also informed Judge Bloom that, as a result of the

criminal charges, the Air Force rescinded Saani's employment at Dobbins Air Force base.  As a

result, Saani does not have employment in the United States.  At the conclusion of the hearing, Judge

Bloom ordered that Saani be released on the basis of a $500,000 bond to be signed by his

unemployed wife (who listed her residence on the bond order as the United States Embassy in

Kuwait) and two brothers who reside in Ohio, and that Saani be subject to electronic monitoring,

despite the fact that he has no address at this time, making such monitoring effectively impossible.

The bond is to be secured by Ahmed Saani's Ohio residence.  The market value of the home is still

unclear, however, the balance due on the mortgage is in excess of $230,000.  Judge Bloom also

asked Saani's counsel to endeavor to retrieve Saani's civilian United States passport and his Ghanian

passport, from Saani's home in Kuwait, but refused to condition Saani's release on the production of

the passports.  At the Government's request, Judge Bloom orally stayed the Release Order to permit

this application to be made.  Judge Bloom asked that all parties appear before her today, May 15,

_____

[3] In the Eastern District of New York, Magistrate Judges rotate their duty shifts weekly.
As a result, Judge Bloom took over Saani's bail hearing when she began her duty week on May

2008, to provide a status report and, if the District of Columbia agrees with her bail order, to release Mr. Saani.

Argument

The Government is Likely to Succeed on the<br>Merits of Its Claim That Saani Is a Serious Risk of Flight

The appropriate burden for establishing risk of flight is a preponderance of the evidence. United States v. Vortis, 785 F.2d 327, 328-29 (D.C. Cir. 1986). A district court should review a magistrate's findings underlying a release order using a de novo standard. The district court reviews de novo the magistrate judge's order establishing release conditions. United States v. Reuben, 974 F.2d 580, 585-86 (5th Cir. 1992). Here, by overlooking or discounting certain crucial facts which constitute not just a preponderance, but compelling evidence of serious risk of flight, Magistrate Judge Bloom erred in finding that Saani's appearance at trial would be assured by means of a $500,000 bond and electronic monitoring.

1.    Saani's Ties in the U.S. are Weak

Saani's ties to the United States are weak. Saani is a citizen of both the United States and Ghana. He has not been a resident of the United States for over a decade; he has lived with his wife and two young children in Kuwait since 1994. Saani's parents and half of his siblings reside in Ghana, where he controls bank accounts and from which he carries a valid passport. At the time of his arrest, Saani was carrying only his diplomatic United States passport, and claims that his civilian United States and Ghanian passports are in his residence in Kuwait. Saani indicated to colleagues at the contracting office in Kuwait that he hoped to delay his employment at Dobbins until the end of

_____

12, 2008.

June so that he could travel to Africa, and had requested approval from the Air Force to delay his employment at Dobbins until July 1, 2008.[4]    Furthermore, since his arrest, the Air Force has indicated to the Government that the position in Georgia is no longer available to Saani.  We also know that his position in Kuwait has ended and he no longer has employment there.  As a result, the Government is unaware of any location where Saani plans to reside or work.[5]

Although Saani has several relatives who live in the United States, they too are Ghanian by birth.  Saani owns a home in Illinois but, there is no evidence he has never lived there.  Aside from occasional trips to the United States, Saani has lived abroad since the mid-1990s and has apparently stored vast sums of money in foreign bank accounts.  Should Saani flee the United States, he will then be able to travel virtually anywhere on the globe, including to Kuwait where his passports are locked in a safe that he controls.  The chances of returning him to the United States to face the pending charges would be remote.  We note that the United States has no extradition treaty with Kuwait or Ghana.  Should Saani flee to either of these jurisdictions, we will have no means through which to seek his return.

2.    Saani has the Werewithal to Support Himself Overseas Indefinitely

Saani has lived in Kuwait, a country with whom the U.S. has no extradition treaty, for more than a decade.  During the past fourteen years, Saani, a Department of Air Force civilian employee, has worked in Kuwait, working most recently as a contracting officer at Camp Arifjan.  During this time Saani has amassed millions of dollars which he has deposited in numerous bank accounts in

---

[4] On May 12, 208, the Government was informed by the Air Force that, prior to learning of Saani's arrest, they had approved a start date of June 23, 2008.

[5] Saani's counsel indicated to the Court yesterday that Saani was willing to take up residence wherever the court proceedings would be taking place.

Ghana, The Netherlands, the Jersey Channel Islands and the United Kingdom despite his status as a

DOD civilian employee earning less than $80,000 a year. Burrus Aff. at ¶ 14. Our investigation

has revealed bank records and wire transfer information indicating that he has amassed more than $4

million over the past six years.

Moreover, while living in Kuwait, Saani has traveled throughout Europe, the Middle East and

Africa. On his diplomatic passport alone, Saani has traveled to Amsterdam, Ghana, Nigeria, Saudi

Arabia, Singapore and the United Arab Emirates. Given his access to United States and Ghanian

passports, foreign assets and the extensive time he's spent abroad, Saani has the means, the

knowledge, and the ability to travel anywhere in the world and to support himself and his family

wherever he may go.

3.    Saani's Representations to the Court Lack Credibility

What is perhaps most troubling is Saani's lack of candor with the Court regarding his

financial status. Saani claims to have two bank accounts – one containing $20,000 and the other

containing $200,000. Additionally, he claims equity of $300,000 in a house in Illinois but has

provided no documentation to support that claim. [6] However, as indicated above, our investigation

has revealed that he has hundreds of thousands, if not millions of dollars more than what he has

acknowledged. In his disclosure to the Court, Saani identified only two accounts and the residence

in Illinois as assets. Saani told Pretrial Services that his checking account had a balance of $20,000

and his sole savings account had a balance of approximately $200,000. Although HSBC closed his

accounts in the Jersey Channel Islands in July 2007, and forwarded bank drafts to him totaling more

---

[6] Saani has not offered this home in his proposed bail package nor has he ever indicated
an intent to return to the Illinois address.

than $700,000, Saani apparently still maintains two accounts in his home country of Ghana, one account in the Netherlands and one account in the United Kingdom. Saani deposited hundreds of thousands of dollars into those accounts over the last few years. Burrus Aff. at ¶ 14. These are the accounts of which we currently have knowledge, and Saani mentioned none of them to Pretrial Services.

4.      Amount of Bond is Inadequate in View of Saani's Financial Resources

A $500,000 bond is not adequate to assure Saani's appearance at trial. As the affidavit of Internal Revenue Service Special Agent Troy Burrus demonstrates, Saani received bank drafts totaling more $700,000 in July 2007. Burrus Aff. at ¶ 13. Our investigation has revealed that this is but a fraction of the amount of money that Saani has at his disposal. Indeed, Saani maintains numerous bank accounts in multiple foreign countries, including his home country of Ghana.

5.      Risk of Flight Alone Warrants Pretrial Detention

It is well-settled that "for pretrial detention to be imposed, lack of reasonable assurance of either appearance or safety of others or community is sufficient; both are not required." United States v. Reuben, 974 F.2d 580, 586 (5th Cir. 1992), cert. denied, 507 U.S. 940 (1993) (emphasis added) (citing United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989), and United States v. Fortna, 769 F. 2d 243, 249 (5th Cir. 1985)). Indeed, there are numerous cases in which defendants have been detained pretrial on the basis of a judicial finding of risk of flight, irrespective of whether they pose a danger to the community. See, e.g., United States v. Vortis, 785 F.2d 327 (D.C. Cir.) (upholding district court's affirmation of magistrate's order detaining defendant on basis of risk of flight), cert. denied, 479 U.S. 841 (1986); United States v. Anderson, 384 F. Supp. 2d 32 (D.D.C. (detaining defendant because of risk of flight), appeal dismissed, 2005 WL 3789065 (D.C. Cir. 2005); United

States v. Motta-Vargas, 2007 WL 1232187 (D.D.C. 2007) (although defendant detained on both

grounds, detention was warranted on grounds of flight risk alone).

For the reasons stated above, there is no condition or combination of conditions that will

reasonably assure his appearance in the District of Columbia. Accordingly, this Court should revoke

the Release Order entered by Magistrate Judge Bloom and order that Saani remain in custody and be

transferred to the District of Columbia, the court of original jurisdiction, to answer the charges

pending in this case.


Dated this 15th day of May, 2008.



Respectfully submitted,

WILLIAM M. WELCH II
Chief, Public Integrity Section

By:    _____
ANN C. BRICKLEY
KATHRYN H. ALBRECHT
RICHARD B. EVANS
Trial Attorneys
Public Integrity Section
1400 New York Ave. NW
Washington, DC 20530
(202) 514-1412
(202) 514-3003 (facsimile)

# EXHIBIT A

# United States District Court

## For The District of Columbia

UNDER SEAL

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

V.

TIJANI AHMED SAANI

DOB: MAY 15, 1956
PDID: PSC 1280, BOX 142
APO AE 09880-9998 (Kuwait)

CASE NUMBER 0 8 - 2 0 3 - M - 0 1

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  Between in or about __April 21, 2006__ in __the State of Kuwait__,

defendant did, (Track Statutory Language of Offense)

willfully make and subscribe a Form 1040 (United States Individual Income Tax Return), which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Director, Internal Revenue Service Center, at Austin, Texas, which said Form 1040 defendant did not believe to be true and correct as to every material matter in that the said Form 1040 Schedule B declared that TIJANI AHMED SAANI did not have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, whereas, he did have an interest in or a signature or other authority over a financial account in a foreign country.

in violation of Title __26__ United States Code, Section(s) 7206(1) _____

I further state that I am a Special Agent with the Internal Revenue Service, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

Signature of Complainant
Troy Burrus, Special Agent
Internal Revenue Service – Crim. Investigation Div.

Sworn to before me and subscribed in my presence,

MAR 2 5 2008
Date

at    __Washington, D.C.__
City and State

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

JOHN M. FACCIOLA
MAGISTRATE JUDGE

AO442(Rev. 12/85) Warrant for Arrest

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

TIJANI AHMED SAANI

**UNDER SEAL**

**WARRANT FOR ARREST**

CASE NUMBER: 08 - 203 - M - 01

To:    The United States Marshal
       and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____Tijani Ahmed Saani_____
                                                          Name
and bring him or her forthwith to the nearest magistrate to answer a(n)

☐ Indictment    ☐ Information    ☒ Complaint    ☐ Order of Court    ☐ Violation Notice    ☐ Probation Violation Petition

charging him or her with (brief description of offense)

willfully making and subscribing a Form 1040 (United States Individual Income Tax Return), which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Director, Internal Revenue Service Center, at Austin, Texas, which said Form 1040 he did not believe to be true and correct as to every material matter in that the said Form 1040 Schedule B declared that TIJANI AHMED SAANI did not have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, whereas, he did have an interest in or a signature or other authority over a financial account in a foreign country.

in violation of Title 26  United States Code, Section(s) § 7206(1)    .

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

Name of Issuing Officer

_signature_

Signature of Issuing Officer

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

Title of Issuing Officer

MAR 2 5 2008    District of Columbia

Date and Location

Bail fixed at $ _____    by _____
                                                          Name of Judicial Officer

| RETURN | | | |
|---|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | | SIGNATURE OF ARRESTING OFFICER |
| | INVESTIGATE COPY ONLY ORIGINAL ON FILE WITH | | |
| DATE OF ARREST | US MARSHALL RM— | | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:                                    :

CRIMINAL COMPLAINT AND         :          MAGISTRATE NO:  0 8 - 2 0 3 - M - 0 7

ARREST WARRANT FOR             :

                               :          UNDER SEAL

TIJANI AHMED SAANI             :

_____      :

## AFFIDAVIT OF TROY BURRUS

I, Troy Burrus, being first duly sworn, hereby depose and state:

### I.    Affiant

1.    I, Troy Burrus, am a Special Agent with the Internal Revenue Service, Criminal Investigation Division, having been so employed since July 1999, and as such am vested with the authority to investigate violations of federal law.  I have received training in investigations of tax fraud, money laundering, and the bank secrecy act and have participated in many such investigations.  I have personally participated in this investigation and am thoroughly familiar with the information contained in this affidavit.

2.    Special Agents with the Defense Criminal Investigative Service ("DCIS"); the Army Criminal Investigation Command ("CID"); the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE"); the Internal Revenue Service, Criminal Investigations Division ("IRS"); and the Special Inspector General for Iraq Reconstruction ("SIGIR"), in conjunction with the United States Department of Justice, Antitrust and Criminal Divisions ("DOJ") have been investigating conspiracies among TIJANI AHMED SAANI ("SAANI"), and others to solicit, receive, and give bribes in Kuwait and elsewhere in return for rigging the award of government contracts and in return for being influenced to commit and aid in the commission of fraud against

Page 1

the United States.   In addition, I have investigated SAANI and his wife, BARBARA SAANI, for violations of the Internal Revenue Code.  As described more fully below, I have probable cause to believe that SAANI has made and submitted under the penalty of perjury a statement that is false as to a material matter on his 2005 tax return.

3.      I make this affidavit in support of a criminal complaint and arrest warrant for SAANI, charging him with one count of making a false statement on a tax return, in violation of 26 U.S.C. § 7206(1).

4.      The facts set forth in this affidavit are based on knowledge I obtained during the course of the investigation, including reviewing documents and computer records related to this investigation; knowledge obtained from other individuals, including other law enforcement officers; discussions with persons with knowledge; knowledge gained by reviewing interviews conducted by other law enforcement personnel; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause to support this application for a criminal complaint and an arrest warrant, it does not set forth each and every fact that I have learned during the course of this investigation or known to the United States.

## II.      Background Information

5.      SAANI, a Department of the Air Force civilian employee, worked as a contracting officer on detail to Camp Arifjan, Kuwait between 2002 and 2007.  During this time SAANI was responsible for awarding and administering contracts for goods and services on behalf of the United States in support of Operation Iraqi Freedom and on behalf of the United States Embassy in Kuwait.  SAANI, along with his wife BARBARA SAANI, and two adopted minor children currently reside in Kuwait.

Page 2

### III.    Probable Cause that SAANI Violated 26 U.S.C. § 7206(1)

6.      On April 21, 2006, SAANI and BARBARA SAANI each signed, under the penalty of perjury, their joint tax return for the 2005 tax year.  Schedule B, attached to their 2005 tax return, includes in Part III, 7a the question:  "At any time during 2005, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?"  SAANI and BARBARA SAANI checked "No" in response to this question.  They left blank Part III, 7b, which asks for the name of the foreign country in which the account exists if the question in Part III, 7a is answered affirmatively.

7.      During the course of this investigation, with the assistance of Her Majesty's Attorney General for Jersey, a self-governing British Crown dependency located in the English Channel, the United States obtained records from HSBC Bank plc and HSBC Bank International Limited, which operate a bank in Jersey.

8.      The bank records produced by HSBC Bank plc and HSBC Bank International Limited show that on January 26, 2003, SAANI completed an Offshore Account Application Form for HSBC in Jersey.  On his application, SAANI listed his home address as the American Embassy in Kuwait.  He also provided to HSBC a copy of his United States Passport to confirm his identity.

9.      In April 2003, HSBC accepted SAANI's application and established two accounts (022-216493-705 and 022-216493-706) for him in Jersey.  SAANI later opened additional accounts at HSBC in Jersey  (022-216493-540, 022-216493-541, 406162-10462128).  Bank and wire transfer records reveal that between March 2003 and July 2007, when HSBC closed these accounts, SAANI made frequent deposits, withdrawals, and other transfers.  In total, at least $700,000 passed through SAANI's HSBC accounts in Jersey.

10.    In 2003, SAANI and BARBARA SAANI wired a total of $376,956.30 from Kuwait to SAANI's HSBC accounts in Jersey.  The table below lists those wire transfers:

| 2003 Wire Transfers to SAANI Accounts at HSBC in Jersey | | |
|---|---|---|
| DATE | AMOUNT | FROM |
| 04/24/2003 | $16,612.31 | SAANI |
| 05/01/2003 | $25,050.00 | SAANI |
| 05/12/2003 | $50,050.00 | SAANI |
| 06/12/2003 | $30,000.00 | BARBARA SAANI |
| 06/19/2003 | $40,087.00 | SAANI |
| 06/19/2003 | $55,000.00 | SAANI |
| 06/30/2003 | $50,000.00 | SAANI |
| 08/19/2003 | $74,972.00 | SAANI |
| 10/10/2003 | $10,185.03 | SAANI |
| 12/29/2003 | $25,000.00 | SAANI |

11.    In 2004, SAANI wired a total of $195,216.10 from Kuwait to his accounts in Jersey.  The table below lists those wire transfers:

| 2004 Wire Transfers to SAANI Accounts at HSBC in Jersey | | |
|---|---|---|
| DATE | AMOUNT | FROM |
| 02/17/2004 | $50,804.40 | SAANI |
| 03/01/2004 | $30,000.00 | SAANI |
| 04/01/2004 | $10,126.93 | SAANI |
| 04/16/2004 | $30,000.00 | SAANI |
| 04/21/2004 | $2,000.00 | SAANI |
| 08/03/2004 | $10,142.40 | SAANI |
| 11/02/2004 | $10,142.37 | SAANI |
| 11/24/2004 | $52,000.00 | SAANI |

12.  In 2005, SAANI wired a total of $106,229.06 from Kuwait to his accounts in Jersey.  The table below lists those wire transfers:

| 2005 Wire Transfers to SAANI Accounts at HSBC in Jersey | | |
|---|---|---|
| DATE | AMOUNT | FROM |
| 01/14/2005 | $26,000.00 | SAANI |
| 03/14/2005 | $20,000.00 | SAANI |
| 04/26/2005 | $10,000.00 | SAANI |
| 07/08/2005 | $20,000.00 | SAANI |
| 0901/2005 | $10,000.00 | SAANI |
| 11/02/2005 | $4,229.06 | SAANI |
| 12/08/2005 | $16,000.00 | SAANI |

13.  When HSBC notified SAANI that it was closing his accounts in July 2007, SAANI responded with a facsimile requesting that HSBC provide him with international bankers drafts in amounts totaling more than $700,000.  SAANI asked HSBC to send to him in Kuwait a $250,000 draft made payable to Real Estate Investment Limited and a $350,000 draft made payable to HABIB SAANI, SAANI's adopted minor son.  In addition, SAANI asked HSBC to issue drafts in the amounts of $136,133.91, EU$ 3,630.73, and GBP 1,103.46 made payable to SAANI himself.  Copies of these drafts produced by HSBC show that all five were at one point negotiated through Standard Chartered Bank or Barclays Bank, both of which maintain branches in Ghana where SAANI is believed to have additional bank accounts.

14.  Our investigation and a review of bank wire transfer records has also revealed that between 2002 and 2007 SAANI deposited large sums of money into foreign accounts which he owns or for which he is the beneficiary.  In 2005, in addition to the deposits made to his HSBC accounts in Jersey, SAANI deposited almost $450,000 in two accounts in his name in Ghana (Barclays Bank, Tamale Branch, Acct # 1255971 and Standard Chartered Bank, Acct # 8700202440500).  That year SAANI also deposited

Page 5

more than $75,000 in an account in his name in The Netherlands (ABN Amro Bank NYC, Acct # 435955071), and more than $140,000 in an account in his name in the United Kingdom (Barclays Bank, Knightsbridge, Acct # 89213722).

## IV.    Conclusion

15.    Based on the foregoing, I respectfully submit that there is probable cause to believe that in 2006 TIJANI A. SAANI:

a)    made and subscribed a tax return for 2005 that was false as to a material matter, i.e., his ownership or control of a foreign bank account;

b)    made and subscribed the return under a written declaration that was made under the penalty of perjury;

c)    did not believe the return to be true and correct as to every material matter; and

d)    falsely subscribed to the return willfully, with the specific intent to violate the law,

in violation of 26 U.S.C. § 7206(1). Accordingly, I respectfully request a warrant to arrest TIJANI A. SAANI .