UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIM. NO. 08-147-RJL** |
| | ) | |
| vs. | ) | |
| | ) | |
| **TIJANI AHMED SAANI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR REVOCATION OF RELEASE ORDER

Defendant Tijani Ahmed Saani ("Saani") argues in his Memorandum in Opposition to Government's Motion For Stay and Revocation of Release Order ("Opposition") that he has significant community ties by offering a hodge podge of connections to the United States and failing to acknowledge his significant ties and assets overseas.[1] When Saani's domestic ties are viewed in context, it is clear that he has no ties to any particular community in the United States and that his ties to the United States in general are limited. Taken together with the extent of his foreign connections and the fact that he has the sophistication and means to live overseas indefinitely, it is clear that Saani poses a serious risk of flight.

<u>Saani's Domestic Community Ties are Nearly Non-Existent</u>

Community ties must be meaningful in order to give rise to the logical inference that they will affect the decisions of a defendant facing charges. It is significant that Saani is not able to define or identify a community to which he has ties or a location where he has employment. Instead

---

1   Saani's Opposition was submitted by Mark Jay Heller, Esq. on May 28, 2008. That same day, Magistrate Judge Levy in the Eastern District of New York accepted substitution of counsel for Saani and he is now represented by Susan Kellman, Esq. and Patricia Pileggi, Esq.

1

he merely lists a handful of relatives that live all over the country and a house in which he has only visited for vacations on leave from Kuwait. He offers no reason for the court to infer that he and his family plan to remain consistently in any jurisdiction. See United States v. Cabrera-Baez, 928 F.2d 467 (Table), 1991 WL 36274 at *2 (D.C. Cir. Mar. 20, 1991)(unpublished)(considering defendant's sporadic residence in the jurisdiction, recent travel to his home country and the fact that most of the defendant's relatives do not live in the District of Columbia in determining that defendant posed a risk of flight).; cf. United States v. Trosper, 809 F.2d 1107, 1110 (5th Cir. 1987) (in a case where there was a presumption of detention, the court held that evidence of family members who lived hundreds of miles away and had no physical or emotional control over the defendants actions was not supportive of the argument that their presence would reasonably assure the defendants appearance at trial).

Saani has voluntarily lived in Kuwait for the past 14 years as a civilian employee of the Air Force. Prior to Saani's overseas employment, he worked at various Air Force bases, moving between three and five times over ten years. During his tenure in Kuwait, Saani did not maintain a residence in the United States. It is undisputed that Saani purchased a house in Illinois while he was living in Kuwait, but there is no evidence that he has ever lived there. In fact, the evidence and arguments put forward by Saani himself undermine the idea that his Illinois house is now or ever was maintained as a residence or that Saani intends to live there in the future.[2] First, Saani claims that he was returning to the United States with the intention of working at Dobbins Air Force Base in Georgia, not Illinois and not close to any of the family members he now cites as evidence of his community ties. (Opp. at 7). Saani also concedes that he planned to interview for a job with the

---

2    Barabara Saani, who is not employed, listed Kuwait – and not Illinois or Georgia – as her current residence

United States Department of State on May 15.[3] (Opp. at 9).

### Saani Has The Sophistication And Means To Live Overseas Indefinitely

Although Saani did visit the United States periodically, he also made regular visits to Ghana and traveled extensively in the Middle East and Africa. Similarly – and contrary to Saani's representation that all of his immediate family members reside in the United States, (Opp. at 6-7) – the Government has reason to believe that Saani's parents and at least one brother live in Ghana. In fact, between 2002 and 2007, Saani wired his brother in Ghana over $630,000 from Kuwait. Also, the two brothers who live in the United States (and who signed his bail bond) are citizens of Ghana, where the United States has reason to believe Saani, his family and associates have maintained bank accounts holding millions of dollars.

Saani's Opposition misses the point in arguing that amassing millions of dollars in offshore accounts is not necessarily a crime. (Opp. at 9). The existence of offshore accounts which contain funds sufficiently large to support his family overseas indefinitely is clearly relevant to the analysis of whether Saani is a flight risk. The additional facts that the account balances are dramatically disproportionate to his government salary and that he has refused to disclose the existence of these accounts to either the Internal Revenue Service or Pretrial Services indicates that Saani is not being candid with the Court and likely has ulterior motives with respect to the funds at his disposal.[4] This

---

on the bail bond she signed on May 14, 2008.
3    Saani has not indicated what the position was for which he was interviewing with the Department of State, but the Government believes that he was interviewing for an overseas post. Saani's candor with the Air force regarding the reasons for his visit to the United States is also questionable. Although Saani now claims that he was in the United States to secure housing in Georgia, his orders did not authorize a trip to the United States for house hunting. See Request/Authoization for DOD Civilian Permanent Duty, Item 13a (Attached as Exhibit A). Instead, he was traveling while on <u>sick leave</u> based on a note from a medical clinic stating that he had a doctor's appointment in Chicago on the morning of May 15, the exact same day that he was supposed to interview with the State Department. See Request for Leave or Approved Absence at 2 (Attached as Exhibit B).
4    Saani's creative arithmetic only serves to illustrate the Government's point that the funds under Saani's control are not in line with his Government salary. Using a fictitious and inflated salary figure, Saani argues that had

refusal is also indicia that Saani will not comply with the Court's order or with the conditions of release put into place.

Even if the Court focuses only on the Jersey Channel Islands account referenced in the Complaint and Indictment, it is clear that Saani owned and controlled a foreign bank account with a balance in excess of $700,000 under a year ago. See Ex. A to Government's Mem. in Supp. of its Motion to Stay and Revocation of Release Order at ¶ 13 ("Burrus Aff."). When that account was closed, Saani directed the bank to send the balance to him in Kuwait. Saani, in turn, transmitted the funds to Ghana. These undisclosed assets alone represent more than three times the account balances that Saani reported to pre-trial services.

The Government is now in possession of Saani's civilian United States passport and his Ghanian passport in addition to his United States diplomatic passport that was seized at the time of his arrest. The Government can not, however, control the reissuance of Saani's Ghanaian passport, nor can it stop Saani from departing the country illegally. Given his access to foreign assets and the extensive time he's spent abroad, in addition to his potential access to a new Ghanian passport, Saani has the means, the knowledge, and the ability to travel anywhere in the world and to support himself and his family wherever he may go.

Detention in this case is fully consistent with the practice of other courts faced with similarly sophisticated defendants. See United States v. Arndt, 329 F. Supp. 2d 182 (D. Ma. 2004) (Harvard educated physician detained where he frequently traveled and was romantically involved with a Venezuelan national); United States v. Jamal, 326 F.Supp.2d 1006, 1008 (D. Ariz. 2003) (defendant,

---

he spent no money and paid no taxes for nearly 25 years, he would have more than two million dollars in savings. (Opp. at 9). However, Saani has never earned a six-figure salary and the Government's investigation has revealed bank records and wire transfer information indicating that Saani has amassed approximately $4 million over just the past six years.

4

a naturalized United States citizen from Lebanon, detained where he owned property valued at $500,000 in Lebanon); United States v. Cole, 715 F. Supp. 677 (E.D. Pa. 1988) (defendants charged with espionage detained where they had access to Yugoslavian passports, visas and bank accounts and maintained ties with people living in Yugoslavia who could assist them in their relocation); United States v. Minns, 863 F.Supp. 360, 364 (N.D. Texas 1994) (serious flight risk found where the IRS had issued notice of levy in the amount of $830,000); United States v. Levine, 770 F. Supp. 460 (N.D. Ind. 1991) (motive to flee enhanced where prominent businessman was currently experiencing a volatile financial situation as evidenced by his filing for bankruptcy).

### Amount of Bond and Conditions of Release are Inadequate in View of Saani's Financial Resources

No bond will be adequate to assure Saani's appearance at trial. As the affidavit of Internal Revenue Service Special Agent Troy Burrus demonstrates, Saani received bank drafts totaling more $700,000 in July 2007. Burrus Aff. at ¶ 13. Our investigation has revealed that this is but a fraction of the amount of money that Saani has at his disposal. Indeed, Saani maintains numerous bank accounts in multiple foreign countries, including his home country of Ghana.

In addition, Judge Bloom's requirement that Saani be electronically monitored is not practicable unless he has a residence. As discussed above, Saani has never identified for the Court a community in which he resides or intends to reside nor does he have employment or community ties binding him to any particular location such that electronic monitoring could even be implemented.

### Conclusion

Looking to the traditional factors for assessing risk of flight, including ties to the community, length of residence in the community, employment and Saani's lack of candor with the Court, the facts of this case establish by more than a preponderance that no condition or combination of

conditions will reasonably assure Saani's appearance in the District of Columbia. Accordingly, this Court should revoke the Release Order entered by Magistrate Judge Bloom and order that Saani remain in custody and be transferred to the District of Columbia, the court of original jurisdiction, to answer the charges pending in this case.

Dated this 30th day of May, 2008.

                                                  Respectfully submitted,

                                                  WILLIAM M. WELCH II
                                                  Chief, Public Integrity Section

By:    **/s/ Kathryn Albrecht**
        ANN C. BRICKLEY
        KATHRYN H. ALBRECHT
        RICHARD B. EVANS
        Trial Attorneys
        Public Integrity Section
        1400 New York Ave. NW
        Washington, DC 20530
        (202) 514-1412
        (202) 514-3003 (facsimile)

**CERTIFICATE OF SERVICE**

     I hereby certify on this 19th day of May 2008, that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent a copy of the above by facsimile and/or electronic mail to the following:

Peter Toumbekis  
Heller & Heller  
fax (212) 737-4186

Susan G. Kellman, Esq. & Associates  
Telephone Number:  718-783-8200  
Fax Number:  718-783-8226  
25 Eighth Avenue  
Brooklyn, New York 11217  
kellmanesq@aol.com

                Respectfully submitted,

                WILLIAM M. WELCH II  
                Chief, Public Integrity Section

By:   **/s/ Kathryn Albrecht**  
      ANN C. BRICKLEY  
      KATHRYN H. ALBRECHT  
      RICHARD B. EVANS  
      Trial Attorneys  
      Public Integrity Section  
      1400 New York Ave. NW  
      Washington, DC 20530  
      (202) 514-1412  
      (202) 514-3003 (facsimile)