UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIM. NO. 08-147-RJL** |
| | ) | |
| vs. | ) | |
| | ) | |
| **TIJANI AHMED SAANI,** | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S
MOTION FOR DE NOVO REVIEW OF BAIL STATUS**

The United States respectfully requests that this Court affirm the Chief Judge's determination that bail is inappropriate in this case. The Defendant remains a serious risk of flight: he has lived overseas for over thirteen years; he has substantial overseas assets, which he failed to disclose to the Internal Revenue Service or to Pre-Trial Services; and is aware that he is being investigated for bribery and contract fraud for which he could face substantial jail time. As discussed more fully below, no amount of bond or other combination of conditions will assure the Defendant's presence at trial; he should remain detained pending trial.

**Background**

The Defendant has been employed by the United States Air Force for twenty-two years. For the last thirteen years, he voluntarily worked overseas, in Kuwait, where he supervised tens of millions of dollars in contracts let by the United States government. During his time in Kuwait, the Defendant traveled extensively throughout the world, including to his native Ghana, and possesses passports issued by the United States and by

Ghana.[1]

Between 2003 and 2007 the Defendant maintained a bank account at HSBC in the Jersey Channel Islands to which he and his wife transferred substantial sums of money. On Schedule B of his Form 1040 for the tax year 2005, the Defendant checked "no" to the question "At any time during 2005, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?" and left blank the follow-up question, which asked the foreign countries in which any foreign accounts are located.

Based on the Defendant's failure to file a truthful tax return in 2005 in violation of 26 U.S.C. § 7206(1), on March 25, 2008, the United States filed a criminal complaint and obtained an arrest warrant, placed under seal, in this District. On May 7, 2008, the Defendant was arrested pursuant to this warrant in the Eastern District of New York. On May 16, 2008, a grand jury sitting in this District returned a single count indictment charging a violation of 26 U.S.C. § 7206(1). A magistrate judge for the Eastern District of New York granted the Defendant's request for bail on May 14, but that order was stayed the next day by Chief Judge Lamberth, who ultimately determined that the Defendant should be held without bail. See Memorandum and Order (Doc. No. 19) (filed June 2, 2008).

The Defendant's arraignment is currently set for Friday, June 20, 2008.

---

[1] The United States is now in possession of the Defendant's passports, but has no means of preventing Ghana from issuing a new passport to the Defendant.

**Legal Standard**

The appropriate burden for establishing risk of flight is a preponderance of the evidence. United States v. Vortis, 785 F.2d 327, 328-29 (D.C. Cir. 1986).  The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 et seq.,  provides that this Court may continue the Defendant's detention if the United States demonstrates that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required. 18 U.S.C. § 3142(e).  Chief Judge Lamberth's determination that no combination of conditions would assure the Defendant's presence at trial may be reconsidered if this Court "finds that information exists that was not known to the movant at the time of the hearing" and that materially affects the bail determination.  18 U.S.C. § 3142(f).

**Argument**

No condition or combination of conditions can reasonably assure the Defendant's presence at trial an the Defendant does not raise any new issues or information that was not known to the defense at the prior bail hearings.  The Defendant has substantial undeclared overseas assets that would allow him to support himself and his family while living away from the United States for significant periods of time.  In addition, the Defendant has no particular ties to this judicial district or, indeed, to any location in the United States.  Finally, the Defendant is aware that he and others face investigation into his activities as a contracting officer at Camp Arifijan in Kuwait, and into the millions of dollars in unreported income the Defendant and his wife wired out of Kuwait between

2002 and 2007 while living there.

1.  The Defendant has the Werewithal to Support Himself Overseas

The Defendant holds substantial assets outside the United States, and assets within the United States that he has not reported to this Court.  In 2003, the Defendant established a bank account at HSBC Bank plc in Jersey, Channel Islands, using the United States Embassy in Kuwait as his mailing address.  That year, the Defendant and his wife sent, by wire transfer, over $375,000 from Kuwait to HSBC in Jersey.  In 2004, 2005, and 2006, the Defendant wired hundreds of thousands more dollars from Kuwait to HSBC in Jersey.  Finally, in 2007, when HSBC closed this account, the Defendant required the bank to provide him with bankers drafts totaling over $700,000, all mailed to his home in Kuwait.[2]

In addition, the government's investigation thus far has revealed that since 2002, the Defendant has deposited more than $650,000 in accounts in Ghana, the Netherlands, and the United Kingdom, and wired hundreds of thousands of dollars more to relatives or associates in Ghana.  See Unsealed Complaint, Attachment #1: Affidavit in Support of a Criminal Complaint (Doc.  No.  1) (filed March 25, 2008), at ¶14.  The Defendant has previously used these foreign assets to purchase property in the United States and,

---

[2] During 2003, the Defendant's only reported source of earned income was the United States Air Force.  That year, he and his wife reported their total income to the Internal Revenue Service as $83,292.  That same year he and his wife transferred over $375,000 from Kuwait to the Defendant's account at HSBC in Jersey, and paid down their mortgage in Flossmoor by about $130,000.

presumably, elsewhere, and can otherwise rely on them to support himself and his family if they fled the United States.

The Defendant's substantial overseas assets, which he has not declared to Pretrial Services or to this Court, would not only allow the Defendant to support himself and his family overseas, but would allow him to adequately compensate any suretors he makes available for a bail package. See, e.g., United States v. Anderson, 384 F. Supp. 2d 32, 41 (D.D.C. 2005) ("Finally, the Court finds that the posting of Mr. Anderson's parents' $500,000 home as security would not provide a reasonable assurance of Mr. Anderson's appearance at trial. There is reason to believe that Mr. Anderson has access to financial resources far in excess of the value of his parents' house, with which he might provide for them (if he has not already) in the event that their house is seized.").

In addition, the Defendant has substantial assets in the United States, some of which have not been disclosed to this Court. The Defendant and his wife appear to own their house in Flossmoor, which in 2002 was valued at $435,000. In 2002, the Defendant and his wife purchased this house for approximately $400,000. After taking out a 15-year mortgage for about $300,000, the Defendant paid off the entire mortgage in several large lump sums between 2002 and 2006. For example, in January 2003, the Defendant paid $31,000 toward his mortgage; in March 2003, he paid $15,000 toward his mortgage; in July 2003 he paid $35,000 toward his mortgage; in October 2003, he paid $50,000 toward his mortgage.

Also, the Defendant and his wife own a rental property in Southwind, Florida, that

generates regular income.  It is estimated that the property is worth between $300,000 and $400,000, and has not been previously disclosed to this Court or included as part of the Defendant's proposed bail package.

2.  The Defendant Has No Significant Ties to Flossmoor, Illinois

Although the Defendant and his wife purchased a house in Flossmoor, Illinois, they have resided in Kuwait since the purchase.  Their home address on tax returns filed since 2002 is Kuwait.  Prior to the Defendant's arrest, they did not intend to reside in Flossmoor.  At most, they visited the property periodically in order to see family, just as they visited Ghana.  Moreover, the Defendant has never expressed an intent to reside in Flossmoor in the immediate future.  In his current motion, the Defendant's insistence that the Flossmoor house is a residence for purposes of this detention analysis is undermined by the assertion that the Saani's intended to live there *after* the Defendant retired.  Mem. Of Law in Supp. Of Defendant's Motion for *De Novo* Review of Bail Status ("Mot. for Review of Bail Status") at 3.  He also expressed his desire to "resume his employment with the United States Air Force," which presumably will once again take him away from his house in Illinois for an indefinite period of time. Id. at 5.  At most, the Defendant concedes that he would be willing to live there "*[i]n the event that this Court concludes that electronic monitoring would be appropriate in this case.*" Id. (emphasis added).  The relevant inquiry for detention analysis, however, is not identification of a place where the Defendant may live at some point in the future or under certain circumstances.  The statute focuses on "the length of residence in the community."  The Saani's have never

resided in the community of Flossmoor, Illinois.

Community ties must be meaningful in order to give rise to the logical inference that they will affect the decisions of a Defendant facing charges. Here, the Defendant cannot define or identify a location within the United States where he has employment or resides with an intent to do so in the future. Instead, he relies on the presence of relatives all over the country, and his wife's purported ties to the Chicago area. He offers no reason for this Court to infer that he and his family plan to remain consistently in any jurisdiction. See United States v. Cabrera-Baez, 928 F.2d 467 (Table), 1991 WL 36274 at *2 (D.C. Cir. Mar. 20,1991)(unpublished)(considering Defendant's sporadic residence in the jurisdiction, recent travel to his home country and the fact that most of the Defendant's relatives do not live in the District of Columbia in determining that Defendant posed a risk of flight).; cf. United States v. Trosper, 809 F.2d 1107, 1110 (5th Cir. 1987) (holding that evidence of family members who lived hundreds of miles away and had no physical or emotional control over the Defendant's actions was not supportive of the argument that their presence would reasonably assure the Defendant's appearance at trial). The Defendant argues that he "has no reason to live at any other location" than Flossmoor, Illinois. Actually, he has no apparent reason to live there, either, nor does he intend to remain there once these proceedings are concluded.

3.  Detention Is Appropriate Given the Offense Conduct and Flight Factors

The Defendant asserts that "Chief Judge Lamberth did not give sufficient weight to the nature of the offense that has been charged... ." Mot. for Review of Bond

Status at 1. To the contrary, the Chief Judge specifically addressed the nature of the charges at issue, noting that "[w]hile [the present charge] is not a crime of violence, nor a terrorism or narcotics offense, it is a crime of deception with direct relevance to Defendant's ability to support himself overseas. Defendant's alleged access to funds in foreign bank accounts, and Defendant's alleged purposeful and illegal concealment of that access, is directly relevant to Defendant's flight risk." Memorandum and Order (Doc. No. 19) (filed June 2, 2008), at 2 (citing 28 U.S.C. § 3142(g)(1)).[3] Moreover, the Defendant is aware that while only one charge has been brought against him thus far – 26 U.S.C. § 7206(1) – the United States continues to investigate his and his wife's conduct and significantly more severe charges remain possible.[4]

## Conclusion

Looking to the traditional factors for assessing risk of flight, including the nature of the Defendant's alleged crime, his substantial foreign assets, his lack of ties to any single community in the United States, his lack of employment, and his lack of candor with this Court, the facts of this case establish by more than a preponderance that no

---

[3] The United States respectfully submits that the Chief Judge's analysis of factors under § 3142(g) remains sound. See Memorandum and Order (Doc. No. 19) (filed June 2, 2008), at 2-5 (analyzing the factors under 3142(g) and concluding that three of the four factors "weigh in favor of detention," and that the Defendant's lack of community ties and substantial foreign assets "in particular indicates a serious flight risk and thus weighs strongly in favor of detention.").

[4] The Defendant is aware that other persons, both civilian and military, working in the base contracting office at Camp Arifijan have been charged for their conduct there.

condition or combination of conditions will reasonably assure Saani's appearance in the District of Columbia. Accordingly, this Court should deny the Defendant's motion and order that he remain in custody pending the resolution of this case.

Dated this 20th day of June, 2008.

                                      Respectfully submitted,

                                      */s/ Ryan Danks*
                                      ANN C. BRICKLEY
                                      KATHRYN H. ALBRECHT
                                      RICHARD B. EVANS
                                      RYAN DANKS
                                      Trial Attorneys

                                      United States Department of Justice
                                      1400 New York Ave. NW
                                      Washington, DC 20530
                                      (202) 514-1412
                                      (202) 514-3003 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify on this 20th day of June 2008, that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent a copy of the above by electronic mail to the following:

>Patricia A. Pileggi
>Patricia A. Pileggi, LLP
>ppileggi@paplaw.com
>
>Susan G. Kellman
>Susan G. Kellman, Esq. & Associates
>kellmanesq@aol.com
>
>John Lauro
>Lauro Law Firm
>jlauro@laurolawfirm.com

>*/s/ Ann C. Brickley*
>ANN C. BRICKLEY
>KATHRYN H. ALBRECHT
>RICHARD B. EVANS
>RYAN DANKS
>Trial Attorneys
>United States Department of Justice
>1400 New York Ave. NW
>Washington, DC 20530
>(202) 514-1412
>(202) 514-3003 (facsimile)